Argued and submitted July 30, 2009, affirmed August 25, petition for review
denied December 9, 2010 (349 Or 370)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## ELMER WALTER NEBEL,
*Defendant-Appellant.*

Crook County Circuit Court
06FE0164; A136957

238 P3d 423

Ernest G. Lannet, Senior Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Appellate Division, Office of Public Defense Services.

Erika L. Hadlock, Assistant Solicitor General, argued the cause for respondent. On the brief were John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Harry B. Wilson, Assistant Attorney General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Deits, Senior Judge.

ARMSTRONG, J.

## ARMSTRONG, J.

Defendant appeals a judgment of conviction for first-degree assault. ORS 163.185 (2007). He assigns error to the trial court's refusal to give jury instructions to support his defense that he was justified in using deadly force to protect himself and others. The state concedes that the trial court's stated reason for refusing to give the instructions was erroneous but argues that the trial court's refusal to give those instructions was nonetheless correct because defendant's requested instructions did not correctly state the applicable law. We affirm.

■■ We review a trial court's refusal to give a requested jury instruction for legal error and the evidence supporting the instruction in the light most favorable to the party who requested it. *State v. Marsh*, 186 Or App 612, 614, 64 P3d 1141, *rev den*, 335 Or 655 (2003). We state the facts of this case accordingly.

One evening in October 2006, defendant and several others were gathered at their friend Nevel's house in Prineville. At some point, the group decided to go to defendant's house. Nevel drove one car, and Thompson, a member of the group, drove his own car.

Meanwhile, Sather and Jas were at Sather's house eating pizza and drinking beer outside with their families. Sather lived around the corner from defendant, roughly a quarter of a mile away.

Thompson drove his car past the Sather residence at a high rate of speed. He missed the turn to defendant's house, so he skidded to a halt, reversed, and sped off down defendant's street. Thompson arrived at defendant's house, where defendant and six or seven friends had gathered on the back porch. Thompson remained outside by the garage with several other people to smoke a cigarette.

Sather and Jas had seen Thompson's driving maneuver and were angered because of the danger that it posed to neighborhood children. They decided to find the driver and tell him about their concerns. They found Thompson's car parked in defendant's driveway, and saw

Thompson and the small group near the garage. Sather and Jas stayed on the side of the street at the top of a small hill that sloped down into defendant's yard. With raised, angry voices, they asked who owned the car that they had seen pass, and Thompson admitted that he was the owner. Defendant and his friends heard the commotion and came around to the side of the house. Neither Sather nor Jas knew defendant; however, Jas and Nevel knew each other.

A heated exchange ensued. Thompson moved up the hill toward Sather and Jas, trying to apologize, but Jas threatened to "kick [Thompson's] ass," if he came any farther up the hill. Another of defendant's friends, Stackhouse, tried to calm Sather and Jas. In response, Jas said to Stackhouse, "Shut up, Spic," and called him a "beaner." Thompson moved toward Sather and Jas, trying to apologize; Nevel also tried to calm Sather and Jas down. Nonetheless, Jas shoved Thompson, who stumbled down the hill. Thompson regained his balance and moved back up the hill toward Sather and Jas. Either Jas or Sather proceeded to punch Thompson in the face.

Defendant then walked up behind Jas and stabbed him twice in the back with a knife. Sather intervened and put defendant in a headlock. After a few moments, defendant dropped his knife, though Sather sustained a knife wound on his arm. While Sather had defendant in a headlock, Jas repeatedly kicked defendant in the face. Jas then used Sather's phone to call 9-1-1. Sather eventually released defendant.

The police arrived, and Sather and Jas were both treated for their wounds. During their interviews with police, Sather said the assailant looked "Mexican" and Jas said he looked "Hispanic."

Defendant was arrested and charged with first-degree assault for stabbing Jas and second-degree assault for wounding Sather. At trial, defendant asserted that his use of deadly force was justified because he had acted under a reasonable belief that such force was necessary to defend him and others from felonious actions by Sather and Jas— namely, assault and intimidation. In support of that defense, defendant requested five separate jury instructions. The first

provided a general instruction on defense of person and the second on limitations on the use of deadly force.

Defendant's three other requested jury instructions were intended to supplement his self-defense claims by explaining the crimes of third-degree assault and first-degree intimidation to which he allegedly responded. Specifically, defendant asserted that his actions were reasonable based on a belief that Sather and Jas were committing or about to commit assault and intimidation against Thompson and others.

The trial court gave defendant's requested instructions on defense of person, limitations on the use of deadly force, and third-degree assault. However, the court refused to give the two first-degree intimidation instructions derived from Uniform Criminal Jury Instructions (UCrJI) 2312 and 2314. UCrJI 2312 is based on ORS 166.165(1)(a)(A), which provides that two or more persons acting together commit the crime of first-degree intimidation if they "[i]ntentionally, knowingly or recklessly cause physical injury to another person because of the actors' perception of that person's race, color, religion, national origin or sexual orientation[.]" Similarly, UCrJI 2314 is based on ORS 166.165(1)(b), which provides that two or more persons acting together commit the crime of first-degree intimidation if they "[i]ntentionally, because of the actors' perception of another person's race, color, religion, national origin or sexual orientation, place another person in fear of imminent serious physical injury[.]"

The trial judge concluded that the evidence presented at trial was insufficient to warrant giving the intimidation instructions. He based his decision on the fact that defendant and Stackhouse did not appear to him to be Hispanic. Accordingly, because he believed that an element of the crime of intimidation—action based on a person's race—was absent, he concluded that the intimidation instructions were inapplicable to defendant's proffered defense. The jury ultimately found defendant guilty of the count of first-degree assault and not guilty of the count of second-degree assault.

■   On appeal, defendant asserts that the trial court erred by refusing to give his requested first-degree intimidation instructions. Specifically, defendant asserts that the trial court refused to give the instructions based on its perception of defendant's and Stackhouse's race. The state appropriately concedes that the trial court's stated rationale was incorrect because the crime of first-degree intimidation is expressly predicated on the *"actors' perception* of another person's race, color, religion, national origin or sexual orientation," ORS 166.165(1)(b) (emphasis added), and there is evidence in the record to support a finding that Jas and Sather perceived defendant and Stackhouse to be Hispanic. However, the state urges us to affirm the trial court's decision because defendant's requested instructions were not correct statements of the law.

■ ■   Oregon law recognizes two types of instructional error: "(1) error in the failure to give a proposed jury instruction, and (2) error in the jury instructions that actually were given." *Williams v. Philip Morris Inc.*, 344 Or 45, 55, 176 P3d 1255, *cert granted*, 553 US 1093, 128 S Ct 2904 (2008), *cert dismissed*, ___ US ___ , 129 S Ct 1436 (2009). As noted, defendant has assigned error to the trial court's refusal to give his requested instructions. It is a long-standing principle of Oregon law that a trial court's failure to give a requested instruction is not error unless the requested instruction is clear and correct in form and substance and completely free from error. *Id.* at 56; *see also Beglau v. Albertus*, 272 Or 170, 179, 536 P2d 1251 (1975) (so stating); *Sorenson v. Kribs*, 82 Or 130, 143, 145, 161 P 405 (1916) (explicitly adopting principle nearly a century ago).

Defendant's requested first-degree intimidation instructions were based on UCrJI 2312 and UCrJI 2314. The instruction based on UCrJI 2312 stated:

"Oregon law provides that two or more persons acting together commit the crime of intimidation in the first degree if the persons intentionally, knowingly or recklessly cause physical injury to another because of the actors' perception of the other's race, color or national origin.

"In this case, to establish intimidation in the first degree, *the state must prove beyond a reasonable doubt the* following five elements:

"(1)  The act occurred in Crook County, Oregon;

"(2)  The act occurred on or about October 2, 2006,

"(3)  *[ ] Jas and [ ] Sather* intentionally, knowingly or recklessly caused physical injury to another;

"(4)  *[ ] Jas and [ ] Sather* acted together; and

"(5)  *[ ] Jas and [ ] Sather* and the other person or persons committed the offense because of their perception of a person's race, color or national origin."

(Emphasis added.) The requested instruction based on UCrJI 2314 was nearly identical, and merely replaced the phrase "intentionally knowingly or recklessly cause physical injury to another" with the phrase "intentionally place another in fear of imminent serious physical injury."

■      As can be seen, defendant's requested instructions are tailored for a case in which the state is *prosecuting* someone for the crime of first-degree intimidation, and, consequently, they do not correctly describe the law governing this case. Specifically, the instructions assert that the state bears the burden of proving that Jas and Sather were committing the crime of first-degree intimidation. In this case, however, the state's burden was to *disprove* beyond a reasonable doubt that *defendant* had a reasonable belief that Jas and Sather were subjecting him and his friends to first-degree intimidation. *See* ORS 161.055; *State v. McMullen*, 34 Or App 749, 752, 579 P2d 879 (1978) (noting state bears burden of disproving self-defense defense beyond reasonable doubt). Thus, the state's burden of proof was the *opposite* of what defendant's instructions described.[1] We recognize that defendant intended to apprise the jury about conduct that would constitute first-degree intimidation, so that the jury could decide if

--------

[1] We note that the trial court gave defendant's requested instruction on third-degree assault, which also stated that the state had the burden of proving that Jas and Sather had committed that crime. Therefore, as explained above, that instruction was also legally incorrect. However, that instruction is not at issue on appeal and, thus, we do not address it.

defendant reasonably believed that deadly force was necessary to defend against that conduct. Nonetheless, defendant's proposed first-degree intimidation instructions were not correct statements of the law as applicable to this case, and, as we will explain, it therefore was not reversible error for the trial court to refuse to give them.

■■ Ultimately, our disposition in this case is controlled by a principle not directly presented by the parties or to the trial court, but that was nonetheless settled in the Oregon Supreme Court's recent decision in *Williams*. In *Williams*, the court faced the question, among others, whether it could affirm a trial court's refusal to give a defendant's requested jury instruction on a basis not raised at trial. 344 Or at 57. The court concluded that it could. Specifically, the court stated:

> "Philip Morris asserts [that] the trial court cannot be affirmed as having been 'right for the wrong reasons.' We reject that argument, because the plaintiff need not have made any objection at all in order for the trial court to have been legally justified in rejecting the instruction, if it did not correctly state the law. The correctness of the instruction, in light of the factual record that both parties had a full opportunity to develop, was purely a legal issue, and the burden was on defendant to offer a legally sufficient instruction. If defendant did not do so, then there was a legally correct justification for the trial court's decision to refuse the proffered instruction. Under such circumstances, the trial court's ruling should be sustained."

*Id. Williams* thus establishes that we cannot reverse a trial court for refusing to give an erroneous instruction.

Here, as explained above, defendant's proposed instructions on first-degree intimidation were legally erroneous. Hence, the trial court did not err in refusing to give them.

■ We recognize that in *State v. Averitt*, 187 Or App 486, 492-93, 68 P3d 269 (2003), we reached a conclusion inconsistent with the principles on the review of jury instructions that *Williams* subsequently established and on which we rely to affirm the judgment in this case. There, the state argued for the first time on appeal that we should affirm the

trial court's refusal to give the defendant's proposed jury instruction on self-defense because, in the context of that case, "that instruction could have been misleading or confusing to the jury." *Averitt*, 187 Or App at 492. Relying on *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001), and *dictum* in *Beall Transport Equipment Co. v. Southern Pacific*, 186 Or App 696, 706, 64 P3d 1193, *adh'd to as clarified*, 187 Or App 472, 68 P3d 259 (2003), we declined to consider the state's "alternative argument," explaining that, "[i]f the state had raised that objection to the trial court regarding defendant's proposed instruction, the record might have been developed differently and, perhaps, the trial court could have relied on the state's reasoning in refusing to give the instruction, or defendant might have revised his proposed jury instruction." *Averitt*, 187 Or App at 493. In light of *Williams*, our reasoning in *Averitt* was erroneous to the extent that it stands for the principle that our review of a trial court's failure to give a proposed jury instruction is limited to the arguments and reasoning presented at trial.

Affirmed.