318 June 18, 2025 No. 545

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

QUINTON LEE BRACKEN,
aka Quinton Bracken,
*Defendant-Appellant.*

Douglas County Circuit Court
19CR72547; A176684

Frances Elaine Burge, Judge.

Submitted April 24, 2023.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and John Evans, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Timothy A. Sylwester, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, Powers, Judge, and Hellman, Judge.

HELLMAN, J.

Conviction on Count 2 reversed; conviction on Count 1 reversed and remanded.

**HELLMAN, J.**

Defendant appeals a judgment of conviction for resisting arrest, ORS 162.315 (Count 1), and interfering with a peace officer (IPO), ORS 162.247 (Count 2). On appeal, defendant argues first that the trial court erred in denying his motion for judgment of acquittal (MJOA) for IPO because he was engaged in "passive resistance," which is not punishable under the statute. Second, defendant argues that the court erred by declining to give his requested jury instruction that included a definition of "passive resistance" as a defense to resisting arrest. Finally, the court conducted an *in camera* review of evidence that defendant subpoenaed, and defendant contends that the court erred by failing to disclose that evidence.

As explained below, we first agree that defendant's conduct constituted passive resistance, and the court erred when it denied his MJOA for IPO. Second, although we agree that the circumstances around the court's refusal to provide defendant's requested jury instruction had a probability of creating an erroneous impression of the law, defendant's requested instruction contained an incorrect statement of law. Therefore, the court did not err in refusing to provide it. Finally, we agree that the court erred in failing to disclose some of the evidence that defendant subpoenaed. Accordingly, we reverse defendant's conviction for IPO, and reverse and remand his conviction for resisting arrest.

Defendant is the owner of the Point 9 bar. Douglas County Sherriff's Deputy Whetzel entered the bar late at night looking for a person in an unrelated matter. Whetzel had been to Point 9 many times before in his official capacity and had a contentious relationship with defendant. Defendant, who appeared very intoxicated, approached Whetzel and asked what he was doing there. Whetzel activated his body worn camera and asked defendant if he was in control of the bar. Defendant said that he was not. Whetzel determined that by "confront[ing]" him, defendant had "assum[ed] the role of manager," which was a violation of OLCC administrative rules to do while under the influence of intoxicants.

Whetzel ordered that the bar be shut down. The bartender insisted that she was in control of the bar, but Whetzel

said that defendant "was just taking control of the bar just now," and ordered the bartender to pull the customers' drinks. The bartender did so while defendant and Whetzel continued to argue about whether defendant was in control of the bar and whether Whetzel was allowed in the bar.

As the customers were leaving, defendant walked away from Whetzel and was pushing open the door when Whetzel said, "You're not going anywhere, [defendant]." With his left hand holding the door ajar, defendant turned slightly toward Whetzel and said, "Yeah, I am." Whetzel immediately walked toward defendant and responded, "No, you're not. You're not free to go." Whetzel repeated, "You're not free to go" multiple times as he moved toward defendant. Defendant turned and faced Whetzel directly and said, "I'm going home." In turning toward Whetzel, defendant took a step backward, moving from the interior of the door's threshold to the exterior threshold. Defendant was still holding the door open with one hand and had his other hand in his pocket. Whetzel was within a few feet of him and still moving forward. When he reached the interior of the door's threshold, Whetzel said, "Get back in here." Defendant made no movement except to shake his head and said "No." Whetzel responded, "Okay, you're under arrest" and reached toward defendant.

Defendant lifted his arms and "pulled himself away" as Whetzel grabbed him. The struggle brought them both outside into the parking lot, where Whetzel forced defendant to the ground and handcuffed him.

At trial, defendant argued that he had engaged in passive resistance and acted in self-defense. He argued that passive resistance was a defense to IPO and resisting arrest and that his use of physical force in response to Whetzel's arrest was reasonable because Whetzel applied more force than necessary. The court denied defendant's MJOA on the IPO charge, and the jury convicted him on both charges.

## PASSIVE RESISTANCE TO IPO

On appeal, defendant first contends that the court erred in failing to grant his MJOA for the charge of IPO. He argues that the only order that Whetzel gave to defendant

was "[g]et back in here" and that the only indication of defendant's refusal to obey that order was his verbal response, "no." To the extent that defendant made any movements after Whetzel's order, defendant contends that it was "no more than *de minimis* movement." Thus, defendant argues that his actions qualified as passive resistance and that the court erred in denying his MJOA.

The state contends that defendant's argument that Whetzel's only order was to "get back in here" was not made below and should not be considered on appeal. Alternatively, the state argues that the court properly denied defendant's MJOA because Whetzel's other statements were orders that defendant disobeyed.

In reviewing the trial court's denial of an MJOA, we view the facts in the light most favorable to the state, drawing all reasonable inferences in the state's favor. *State v. Walker*, 332 Or App 594, 595, 549 P3d 576, *rev den*, 372 Or 813 (2024) (internal quotation marks omitted). Reviewing under that standard, we conclude that the court erred by failing to grant defendant's MJOA because defendant's actions constituted passive resistance.

A person commits the crime of interfering with a peace officer when the person, "knowing that another person is a peace officer," "refuses to obey a lawful order" given by that peace officer. ORS 162.247(1)(b) (2019).[1] The statute does not apply, however, "in situations in which the person is engaging in *** passive resistance." ORS 162.247(3).

Although it is not defined by statute, the Oregon Supreme Court has interpreted the phrase "passive resistance," for purposes of ORS 162.247(3)(b), to refer to "noncooperation with a lawful order of a peace officer that does not involve active conduct." *State v. McNally*, 361 Or 314, 339, 392 P3d 721 (2017). In that case, the defendant refused to comply with a police officer's repeated orders to leave a bus station and verbally insisted that the officer "couldn't make him leave." *Id.* at 316-17. On review, the Supreme Court reversed the defendant's conviction for IPO, explaining that

---

[1] ORS 162.247 (2019) was amended by Oregon Laws 2021, chapter 254, section 1. All references hereafter are to the 2019 statute.

the defendant's refusals constituted "inactive, nonviolent noncooperation when the police officer ordered him to leave the bus station." *Id*. at 339.

We applied that decision in *State v. Bledsoe*, 311 Or App 183, 487 P3d 862, *rev den*, 368 Or 637 (2021). In *Bledsoe*, the defendant was walking away from a TriMet train when officers ordered her to stop and show proof of fare. *Id*. at 185. The defendant continued "walking at a steady pace, despite the officer ordering [her] to stop and show proof of fare three more times." *Id*. The state charged the defendant with IPO for refusing to obey the officer's orders; the defendant moved for a judgment of acquittal on the IPO charge, and the trial court denied the motion. *Id*. at 185-86. On appeal, the defendant argued that "continuously walking before, during, and after the officer ordered her to stop was simply passive resistance." *Id*. at 186. We disagreed with that argument and affirmed the trial court's decision, clarifying that the defendant "was engaged in active, physical movement—the activity of walking. And there is no dispute that she refused to obey the [officer's] order to stop." *Id*. at 189. Thus, we concluded that the defendant's conduct was not "passive" resistance. *Id*. at 190.

In this case, we come to a different conclusion. Having reviewed the record, including the body camera footage, we conclude that, viewing the evidence in the light most favorable to the state, defendant's conduct qualified as passive resistance.

We are not persuaded by defendant's argument, however—even assuming it was preserved—that the only lawful order that Whetzel gave was to "[g]et back in here." Just as the officers in *Bledsoe* "ordered [the defendant] to stop," Whetzel's statement that defendant was "not free to leave" was a "lawful order" by a peace officer that communicated to defendant that he could not leave the bar, and defendant would have violated ORS 162.247(1)(b) had he continued to walk away.[2] *Id*. at 185-86. Unlike the defendant in *Bledsoe*, however, defendant did not continue to walk away. Instead, defendant

---

[2] We need not decide whether Whetzel's first statement, "[y]ou're not going anywhere," was a lawful order. That statement was made within a few seconds of his order that defendant was "not free to go" and does not affect our analysis.

responded to Whetzel's lawful order by turning back toward Whetzel. Defendant verbally disobeyed the order by stating that he was going home, but defendant obeyed physically in that he halted his exit and remained standing at the door. The same is true of Whetzel's next order for defendant to "get back in here." Defendant shook his head and verbally refused, but he did not otherwise move. In sum, during the 10 seconds between Whetzel's order that defendant was not free to leave and telling defendant that he was under arrest, the totality of defendant's conduct involved defendant halting his exit, shifting from facing away from Whetzel to facing towards him, holding the door fully ajar, stepping backward from the interior threshold of the door to the exterior threshold, and shaking his head no. On those facts, we conclude that defendant's resistance was inactive, nonviolent noncooperation in opposition to Whetzel's lawful order.

In making that conclusion we recognize that defendant made *some* movements, however minor, following the deputy's order and that "movement is, by definition, active." *Bledsoe*, 311 Or App at 191 (James, J., concurring). We disagree, however, that the holding in *McNally* requires the conclusion that "[v]irtually any human act short of rigid immobility in response to an order does not qualify as passive resistance." *Bledsoe*, 311 Or App at 196 (James, J., concurring). Although we will not attempt to set the precise parameters here, we conclude that, under the facts of this case, defendant's movement did not involve "violence or active measures of opposition" to a lawful order. *See McNally*, 361 Or at 322 (providing the dictionary definition of "passive resistance," which "has the same meaning whether considered in a lay or legal context," as "resistance *** that does not resort to violence or active measures of opposition" (citing *Webster's Third New Int'l Dictionary* 1651 (unabridged ed 2002))). Thus, defendant's conduct constituted passive resistance, and the court erred when it denied his MJOA.

## JURY INSTRUCTION FOR RESISTING ARREST

Defendant next challenges the trial court's refusal to give his requested jury instruction related to the charge of resisting arrest. Prior to trial, defendant gave notice that he intended to rely on a "passive resistance" defense to both

the IPO and resisting arrest charges. Just as ORS 162.247 exempts a person engaging in "passive resistance" from liability to the charge of IPO, ORS 162.315 exempts a person engaging in "passive resistance" from liability to the charge of resisting arrest. *See* ORS 162.315(1) ("A person commits the crime of resisting arrest if the person intentionally resists a person known by the person to be a peace officer or parole and probation officer in making an arrest."); ORS 162.315(2)(c) ("'Resists' means the use or threatened use of violence, physical force or any other means that creates a substantial risk of physical injury to any person and includes, but is not limited to, behavior clearly intended to prevent being taken into custody by overcoming the actions of the arresting officer. The behavior does not have to result in actual physical injury to an officer. Passive resistance does not constitute behavior intended to prevent being taken into custody.").

During defense counsel's cross examination of Whetzel, however, the prosecutor contended that passive resistance was not a defense to the charge of resisting arrest.

"**Q** [by defense counsel]: And you know that you're allowed to engage in passive resistance to a lawful order. Correct?

"A [by Whetzel]:   Yes.

"**Q**:   You've been trained in that. You have acknowledged that previously?

"A:   Yes.

"**Q**:   Just like you're allowed to engage in passive resistance to, to arrests. Correct?

"[Prosecutor]:   Your Honor, I'm gonna object. That's actually not the law. So - -

"[THE COURT]:   Why don't you rephrase.

"[Defense counsel]:   Well, it's a defense to Resisting Arrest, that you're engaging in passive resistance. Correct?

"[Prosecutor]:   Your, Your Honor, I'm gonna have to object. It's literally not. And I'm happy to have this conversation outside of the presence of the jury. And I have case law to support that.

"[Defense Counsel]:   I have case law against it. We'll, we'll reserve this, Judge, if you would like.

"[Prosecutor]:   The, the term passive resistance is only unique to Interfering With a Peace Officer.

"[Defense counsel]:   Well - -

"[THE COURT]:   Right. Let's leave it as that. Okay. Okay."

Defense counsel continued questioning Whetzel without further mentioning passive resistance to resisting arrest.

Outside of the presence of the jury, the parties discussed, and the court considered, defendant's requested jury instruction. Defendant's requested instruction stated:

"'Passive Resistance' refers to noncooperation with a peace officer's arrest that does not involve violence or active measures, but can involve verbal[] refusals, whatever the motivation for the noncooperation and regardless of whether the noncooperation takes the form of acts, techniques, or methods commonly associated with the civil rights movement. The State is required to disprove beyond a reasonable doubt that [defendant] did not engage in 'passive resistance' to his arrest."

The prosecutor argued that the requested instruction "misstate[d] the law" by suggesting that passive resistance was a defense to resisting arrest. Defense counsel argued that, under *McNally*, passive resistance was a defense to both IPO and resisting arrest. The court concluded that, because *McNally* did not involve a charge of resisting arrest—and only involved IPO—the case did not support defendant's contention that passive resistance applied to the charge of resisting arrest. It therefore declined to give defendant's requested instruction.

Despite that ruling, the court provided the jury an instruction regarding resisting arrest that tracked the language of ORS 162.315(2)(c), including that "[p]assive resistance does not constitute behavior intended to prevent being taken into custody." Evidently, neither the parties nor the court took notice that the statute itself provided that "passive resistance" does not constitute resisting arrest.

We review a trial court's refusal to give a jury instruction for legal error and consider the evidence supporting the instruction in the light most favorable to the

party who requested the instruction. *State v. Nebel*, 237 Or App 30, 32, 238 P3d 423, *rev den*, 349 Or 370 (2010). "A criminal defendant is entitled to have the jury instructed in accordance with his or her theory of the case if the instruction correctly states the law and there is evidence to support giving it." *McNally*, 361 Or at 320.

Defendant argues that his requested jury instruction correctly stated the law and was warranted by the facts of the case. He contends that, despite the court providing an accurate definition of "resists" under ORS 162.315(2)(c), the court's failure to provide the instruction was harmful because the jury was likely misled by the state's objection during Whetzel's cross-examination.

The state does not contend on appeal that defendant's requested instruction was a misstatement of law but argues that any error was harmless because the instruction that the court did provide followed the language of the statute, including the exclusion for "passive resistance." The court also provided defendant's requested instruction on passive resistance for the IPO charge, which the state contends "was not substantively different" from the instruction the court declined to give for the resisting arrest charge. Thus, the state contends that the jury was properly apprised that passive resistance was a defense to resisting arrest.

A court's failure to provide an instruction is harmless if we determine that "there was 'little likelihood that the error affected the verdict.'" *State v. Owen*, 369 Or 288, 323, 505 P3d 953 (2022) (quoting S*tate v. Davis*, 336 Or 19, 33, 77 P3d 1111 (2003)). To make that determination, "we consider the instructions 'as a whole and in the context of the evidence and record at trial, including the parties' theories of the case with respect to the various charges and defenses at issue.'" *Id*. (quoting *State v. Payne*, 366 Or 588, 609, 468 P3d 445 (2020)). An instructional error is prejudicial if the jury instruction, or its absence, "probably created an erroneous impression of the law in the minds of the jury members and if that erroneous impression may have affected the outcome of the case." *State v. McKinney/Shiffer*, 369 Or 325, 335, 505 P3d 946 (2022) (internal quotation marks omitted).

Here, we first determine that defendant's requested instruction included a misstatement of law. That determination requires us to conclude that the court did not err in refusing to provide the instruction. Despite that conclusion, we agree that the context in which the court declined to provide defendant's requested instruction had a probability of creating an erroneous impression of the law that may have affected the outcome of the case. Further, as we will explain below, defendant's third challenge in this case requires that his conviction for resisting arrest be reversed and remanded. Therefore, because the jury instruction issue may arise on remand, we write to explain why defendant was entitled to an instruction similar to the one he requested, barring the misstatement of law. We start with the misstatement.

The second sentence of defendant's proffered instruction misstated the law. That sentence asserted that the state "is required to *disprove* beyond a reasonable doubt that [defendant] *did not* engage in 'passive resistance' to his arrest." (Emphasis added). An accurate reading of the double negative in that sentence would suggest that the state was required to prove that defendant did engage in passive resistance. In fact, the law required the opposite; the state was required to *prove* beyond a reasonable doubt that defendant *did not* engage in passive resistance to his arrest. The incorrect statement requires us to conclude that the court did not err in refusing defendant's requested instruction. *See State v. Worthington*, 251 Or App 110, 113, 282 P3d 24 (2012) ("If a proffered instruction is refused * * * there is no error if the instruction is not a correct statement of the law." (Internal quotation marks omitted.)).

Nevertheless, the first sentence in defendant's instruction—which was the only sentence in dispute below and is the focus of the parties' arguments on appeal—was a correct statement of law. There is no dispute that, where a person's only resistance to an officer making an arrest is passive, the resistance "does not constitute behavior" that can be prosecuted under ORS 162.315. Thus, defendant's contention at trial that he passively resisted the arrest was a legally sound theory of defense. The first sentence in defendant's requested jury instruction, referenced above, properly

asserted as much by tracking the language the Supreme Court used in defining "passive resistance" as it relates to ORS 162.247. *See McNally*, 361 Or at 334 (explaining that "passive resistance" in ORS 162.247 "refers to noncooperation with a peace officer's lawful order that does not involve violence or active measures, whatever the motivation for the noncooperation and regardless of whether the noncooperation takes the form of acts, techniques, or methods commonly associated with civil rights or other organized protest"). And, viewed in the light most favorable to defendant, a reasonable juror could have agreed with defendant's theories and found that his resistance to the arrest was passive and that he acted in self-defense. and in self-defense.

Importantly, the prosecutor's argument that passive resistance was "literally not" a defense to resisting arrest, and that case law supported that contention, was an incorrect statement of the law that directly undercut defendant's theory of defense. Not only did the prosecutor make that erroneous argument in front of the jury, but, by objecting during defense counsel's cross-examination of Whetzel, it limited defendant's ability to continue his line of questioning related to passive resistance.

Further, the court provided defendant's requested "passive resistance" instruction for the IPO charge but did not for the resisting arrest charge. Although the trial court's instruction related to resisting arrest properly included a definition of "resists" as stated in ORS 162.315, the court's omission of a specific "passive resistance" instruction for the resisting arrest charge—when considered in the context of the prosecutor's erroneous statements—could have led a reasonable juror to conclude that the court had agreed with the prosecutor's argument. Therefore, defendant would have been entitled to an instruction on passive resistance for the charge of resisting arrest had he provided one that correctly stated the law. Because he did not, the court did not err.

DISCLOSURE OF *IN CAMERA* EVIDENCE

Finally, defendant contends that the court erred by failing to disclose relevant impeachment or exculpatory evidence to the defense. Prior to trial, defendant issued a

subpoena *duces tecum* to the Douglas County Sheriff's Office, requesting the "complete disciplinary file" of Deputy Whetzel. Douglas County moved to quash the subpoena, arguing that defendant had failed to make the required showing of materiality, and that an officer's personnel records were confidential and privileged. Defendant then issued another subpoena to the county, requesting three categories of material:

> "[Packet] 1.   The complete disciplinary file of Deputy Travis Whetzel, \* \* \* and specifically including any and all complaints, whether or not investigated, whether or not dismissed, and whether or not any adverse findings were made, to include any reports made by Apryl Morris and all arising out of interactions at or around the Point 9, Canyonville establishment;

> "[Packet] 2.   All reports and recordings, including the body worn camera of or which refer to Travis Whetzel in that relate in any fashion (subject, witness, defendant) to [defendant] and/or the Point-9, Canyonville establishment in the past ten (10) years;

> "[Packet] 3.   All reports and recordings, including the body worn camera of or which refer to [State] v. Daniel Schrack; 21CR05983."

Eventually, the parties stipulated to have the court conduct an *in camera* review of all three packets of material. After its review, the court allowed the information in Packet 2 to be discovered by the parties. The court did not release any material from Packets 1 or 3. For Packet 3, the court determined that it involved information related to an ongoing investigation. For Packet 1, the court determined that the information was protected under the public officer privilege, OEC 509, and was exempt from discovery.

On appeal, defendant argues that the court erred by failing to release the information contained in Packets 1 and 3. He asks that we conduct our own review of the material to determine whether they contain exculpatory or impeachment evidence. The state does not object to our review, which we conduct *de novo*. *State v. Hernandez-Sanchez*, 310 Or App 231, 236, 486 P3d 806 (2021) (conducting *de novo* review of undisclosed evidence that the trial

court reviewed *in camera*). Having reviewed the evidence in Packets 1 and 3, we conclude that the court erred in failing to disclose the materials contained in Packet 1 because it contains evidence favorable to defendant, and he was prejudiced by its suppression.

"The due process clause of the federal constitution prohibits a prosecutor from withholding evidence favorable to the defense and material to the question of guilt or punishment." *State v. Warren*, 304 Or 428, 430, 746 P2d 711 (1987) (citing *Brady v. Maryland*, 373 US 83, 87, 83 S Ct 1194, 10 L Ed 2d 215 (1963)). [3] The duty to disclose such evidence "encompasses impeachment evidence as well as exculpatory evidence." *Strickler v. Greene*, 527 US 263, 280, 119 S Ct 1936, 144 L Ed 2d 286 (1999). For a "true *Brady* violation" to occur, there must be evidence that is favorable to the defense, either because it is exculpatory or impeaching; the state must have willfully or inadvertently failed to produce the evidence; and the suppression must have prejudiced the defendant. *Id*. at 281-82.

Here, there is no dispute that the state sought to suppress the evidence; the only issues are whether the undisclosed material contained evidence favorable to defendant and whether he was prejudiced by its suppression.

We readily conclude that the evidence in Packet 1, which included Whetzel's disciplinary file, would have been favorable to defendant. [4] The central issue in this case was one of credibility and the file contains information that is favorable to defendant on that issue. The state relied on Whetzel's testimony to prosecute its case—he was the only

---

[3] Defendant also asserts a violation of his compulsory right to process under Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution. The Oregon Constitution does not contain a due process provision, and we have previously adopted the federal due process analysis for challenges to the state's withholding of material favorable evidence under the compulsory process clauses. *See*, *e.g.*, *Hernandez-Sanchez*, 310 Or App at 235-36 (applying federal due process analysis to claims made under compulsory process clauses); *State v. Zinsli*, 156 Or App 245, 252, 966 P2d 1200, *rev den*, 328 Or 194 (1998) (explaining that Oregon's compulsory process analysis "is identical to" the federal due process analysis). Accordingly, we apply that analysis here.

[4] We conclude that the court properly excluded the information from Packet 3 because that information was not "evidence favorable to the defense" and there was no prejudice to defendant by the lack of disclosure.

witness the state called. Whetzel testified about his previous interactions with defendant, including giving citations to the bartenders at Point 9 and giving defendant a warning "on a previous occasion." Despite their history, Whetzel testified that he had "always gone in [to Point 9] to do [his] job."

On redirect, after asking Whetzel to opine on defendant's legal theory, the prosecutor asked about Whetzel's own credibility:

"Q [by the prosecutor]:  So was this, given your training and experience, [defendant's] behavior that night, passive resistance under the law?

"A [by Whetzel]:  No.

"*****

Q:  "Deputy, have you ever been reprimanded for lying in your official capacity?

"A:  No.

"Q:  Have you ever been told in your 17-year career that you have veracity issues?

"A:  No."

Given the state's heavy reliance on Whetzel's testimony, and Whetzel's testimony regarding his own veracity, any evidence that would have contradicted his answers would have been favorable to defendant. *See Milke v. Ryan*, 711 F3d 998, 1012 (9th Cir 2013) (explaining that evidence that would "tend to call the government's case into doubt is favorable for *Brady* purposes").

Suppressing the evidence was also prejudicial to defendant. Defendant's theory of defense was that he engaged in passive resistance and self-defense in response to Whetzel's orders and arrest. He argued that, due to a long history of animosity between defendant and Whetzel, Whetzel "lost perspective" and "just turn[ed] it up right away." In support of his theory, defendant called as a witness a former Point 9 employee, who testified that Whetzel came into the bar "two or three times a week" to do "walk-throughs." She testified that Whetzel was always "negative," "angry," and that interactions between defendant

and Whetzel "always looked like there was going to be a confrontation." Thus, evidence supporting defendant's narrative—and contradicting the state's—would have raised a reasonable probability of a different result. *See Milke*, 711 F3d at 1018 (explaining that to find prejudice under *Brady*, "it isn't necessary to find that the jury would have come out differently" so long as there is "a reasonable probability of a different result" (internal quotation marks omitted)).

We therefore conclude that the information in Packet 1 contains evidence, "which, if believed by a trier of fact, would be seriously considered by that trier of fact in determining guilt or innocence." S*tate v. Fleischman*, 10 Or App 22, 33, 495 P2d 277 (1972) (internal quotation marks omitted). The trial court erred by failing to disclose it to defendant.[5]

Conviction on Count 2 reversed; conviction on Count 1 reversed and remanded.

---

[5] The parties ask that if we conclude that the court should have disclosed evidence, as we have here, they be allowed to file supplemental briefing—defendant to argue that the evidence was prejudicial, and the state to argue whether any asserted privilege prevents disclosure. As we have explained, however, defendant was prejudiced. And a defendant's right to material exculpatory and impeaching evidence is guaranteed, regardless of whether such evidence is privileged. *See Fleischman*, 10 Or App at 32 ("When the state chooses to prosecute an individual for a crime, it is not free to deny him access to evidence that is relevant to guilt or innocence, even when otherwise such evidence is or might be privileged against disclosure."). The state also asks, should this court find that disclosure is required, that it be allowed to file supplemental briefing to address the question of "under what conditions" disclosure must occur. We do not address that issue but, on remand, if necessary, in the trial court, the parties can litigate the question of appropriate conditions for disclosure.